UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLLY R. RIDINGS,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN FAMILY INSURANCE CO.,<br><br>    Defendant. | No. 20 CV 5715<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

In response to the COVID-19 pandemic, defendant American Family Insurance Company gave its auto-insurance customers $50 and knocked ten percent off premiums for six months. Not enough, says Illinois policyholder and plaintiff Holly Ridings. Public health measures led to emptier roads and fewer insurance claims; accordingly, Ridings argues, American Family owes more premium relief to customers to avoid an unjust outcome. Ridings brings claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, common law fraud, bad-faith breach of contract, and unjust enrichment; she also seeks declaratory relief. American Family moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted.

**I.    Legal Standards**

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient

"to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the complaint's factual allegations as true and draws all reasonable inferences in plaintiff's favor, but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. Documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (quoting *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).

Plaintiffs alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b). They must describe the "who, what, when, where, and how" of the fraud. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). In other words, a plaintiff must include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (quoting *U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

## II. Facts

Holly Ridings holds an auto-insurance policy with American Family. [7] ¶ 3.[1] She claims that American Family gave inadequate premium relief to its Illinois policyholders with policies in effect as of March 1, 2020. *Id.* ¶¶ 1–2.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [7].

In March 2020, Illinois took a number of steps to limit the spread of COVID-19. The governor issued a disaster proclamation and signed a series of executive orders limiting the size of gatherings; closing schools, restaurants, and other businesses; and ordering Illinoisans to stay home. *Id.* ¶¶ 13–16. As a result, residents drove "less frequently and less far," which "dramatically empt[ied] Illinois'[s] roads of vehicle traffic." *Id.* ¶ 17. This decrease in traffic resulted in "fewer motor vehicle accidents—and, therefore, fewer auto insurance claims," which "will almost certainly continue for the foreseeable future, and for as long as the COVID crisis continues." *Id.* ¶ 19. The premiums American Family charged its policyholders—which were based in part on projections about future claims and costs—thus "became dramatically overstated" and "grossly excessive." *Id.* ¶¶ 21–22.

In response, American Family provided premium relief to its Illinois policyholders. In April 2020, it issued a one-time $50 payment to customers with eligible policies in force as of March 11, 2020; it subsequently offered a ten-percent credit on personal auto premiums from July 1 through December 31, 2020. *Id.* ¶ 25. The complaint says this relief "has been grossly inadequate and designed to secure for American Family an unearned and unfair windfall." *Id.* ¶ 24. American Family's premium relief "falls far short of the relief that any fair and reasonable actuarial analysis would require" and "compares unfavorably to substantially all of the premium-relief programs established by other Illinois auto insurers in response to the COVID-19 crisis." *Id.* ¶¶ 25, 27. For example, State Farm—the largest auto-

3

insurance provider in the country—provided its policyholders with a twenty-five percent credit on premiums from March 20 to May 31, 2020. *Id.* ¶ 23.

In making its offer for premium relief, American Family represented that policyholders "can trust" American Family "to support" them "during the coronavirus." *Id.* ¶ 42. American Family also said "[w]e're here when you need us" and that it offered premium relief to "support our customers through the changes and challenges brough[t] on by the COVID-19 pandemic." *Id.* ¶ 50. It represented to Illinois "policyholders (implicitly, if not explicitly) that such offer [was] fair and reasonable, when in fact it [was] neither." *Id.* ¶ 39. American Family "concealed" or "omitted to share" with policyholders "the inadequacy and unfairness of [its] offer" and "the fact that such offer compares unfavorably to the COVID-19 premium relief offered by all or substantially all other Illinois auto insurers." *Id.* ¶¶ 40–41.

Ridings seeks declaratory relief (Count I) and brings claims under the Illinois Consumer Fraud Act (Count II), common law fraud (Count III), bad-faith breach of contract (Count IV), and unjust enrichment (Count V).[2]

---

[2] The court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453. Ridings, an Illinois citizen, originally filed this putative class action in the Circuit Court of Cook County, seeking to represent all Illinois residents with an American Family auto-insurance policy as of March 1, 2020. American Family, a Wisconsin citizen, timely removed the case to this court under 28 U.S.C. §§ 1446(b), 1453. Diversity between Ridings and American Family establishes minimal diversity and the aggregate amount in controversy exceeds $5,000,000, so CAFA supports jurisdiction.

### III. Analysis

#### A. Illinois Consumer Fraud and Deceptive Business Practices Act

The Consumer Fraud Act bars unfair and deceptive commercial practices, including "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. The law is "intended to protect consumers ... against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 20. To state a claim, a plaintiff must plead "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant*, 934 F.3d at 736. To establish actual damages, a plaintiff must show "actual pecuniary loss." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)).

A plaintiff may recover based on unfair or deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (2002); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). These are distinct theories with different pleading standards: claims based on unfair conduct are subject to the ordinary notice-pleading standard under Federal Rule of Civil Procedure 8(a), but deceptive-conduct claims must be pleaded with particularity under Rule 9(b)'s heightened standard. *Vanzant*, 934 F.3d at 738–39. Under either theory, however, a plaintiff must adequately plead "that but for the defendant's deceptive or unfair conduct, [she] would not have been damaged." *Id.* at 739 (quotation marks and

5

citation omitted). Ridings argues that American Family's premium relief program was both deceptive and unfair.

### 1. Deceptiveness

A practice is deceptive "if it creates a likelihood of deception or has the capacity to deceive." *Benson*, 944 F.3d at 646 (citation omitted). The likelihood of deception depends on whether the practice at issue would deceive a reasonable consumer. *See Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 74 (2007). While a valid claim must plead that the deceptive practice caused damage, "reliance is not an element of statutory consumer fraud." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501 (1996). The allegedly deceptive act "must be looked upon in light of the totality of the information made available to the plaintiff." *Benson*, 944 F.3d at 646 (quoting *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)).

Plaintiff bases her deceptive-conduct theory on two American Family representations, and two things it concealed or omitted. In its offer and statements posted on its website, American Family: (1) represented implicitly or explicitly that its offer was fair and reasonable, and (2) expressly stated that policyholders "can trust" American Family "to support" them during the pandemic. [7] ¶¶ 25, 39, 42. American Family also failed to share: (1) the inadequacy and unfairness of its premium relief offer, and (2) that its offer compared unfavorably to the COVID-19 relief offered by its competitors in Illinois. *Id.* ¶¶ 40–41. Ridings argues that these representations and omissions concealed the windfall nature of the relief program. And Ridings claims that, as a direct result of American Family's deceptive conduct,

6

she has "been deprived of the COVID-related premium relief to which [she is] fairly and lawfully entitled." *Id.* ¶ 45.

American Family says this isn't enough under Rule 9(b), because Ridings does not allege "how or when *she* supposedly saw the allegedly fraudulent statements on American Family's website" or that the "alleged fraud caused her to take, or refrain from taking, any action." [20] at 3. To be sure, an action under the Consumer Fraud Act requires a plaintiff to "receive, directly or indirectly, [the] communication or advertising from the defendant." *De Bouse v. Bayer*, 235 Ill.2d 544, 555 (2009). But Ridings has identified the content (representations of fairness, reasonableness, trust, and support), who made the representation (American Family), the time (April 2020), and the place and method of communication (via a statement on its website). *See* [7] ¶¶ 25, 39–42; [19] at 6. Ridings isn't required to "provide the precise date, time, and location that [s]he saw the [statement] or every word that was included;" she must simply plead that the representation was "made to [her] *before*" she allegedly suffered damage. *Camasta*, 761 F.3d at 737–38. Although the complaint does not detail precisely when Ridings came across the representations, it claims that she was a policyholder in April 2020 (when American Family offered relief and made these representations on its website), and that she relied on these representations to her detriment. [7] ¶¶ 3, 25, 53–54. There's enough in the complaint to reasonably infer that Ridings saw the statements before her alleged damage. Whether those representations were in fact deceptive or she's adequately alleged actual damage is another matter.

The complaint does not allege anything that would deceive a reasonable consumer. Ridings has not identified what she must under the Consumer Fraud Act: a material fact that was misrepresented, concealed, or omitted. *See* 815 ILCS 505/2. She concededly does not allege that American Family failed to provide the relief it described. It gave policyholders $50 and a ten-percent discount on premiums from July through December 2020. Instead, she argues that the company was deceptive because it "falsely described that relief in glowing terms, while also concealing that the arrangement constituted a windfall at the policyholder's expense." [19] at 9.

A subjective description of an offer in favorable terms is puffing, however, and puffing is not deceptive conduct. *Barbara's Sales*, 227 Ill.2d at 73 (quoting *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill.2d 100, 174 (2005)) (listing non-actionable puffing descriptors including "high-quality," "perfect," "magnificent," "picture perfect," and "best"). Ridings's theory is that American Family's offer of premium relief contained an implicit guarantee that the offer was fair and reasonable. But implicit representations based on puffery are not actionable under the Consumer Fraud Act. *Barbara's Sales*, 227 Ill.2d at 73; *id.* at 74 ("Our precedent disallowing such actions premised on puffery is based on the sound reasoning that no reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase."). Further, even if Ridings could show that American Family had affirmatively said that its premium relief program was "fair and reasonable"— something she has not actually alleged—those statements would still not be actionable under Illinois law. *Avery*, 216 Ill.2d at 173 (insurance company's

8

description of products as "quality" and "very high performance" was puffing). Ridings tries to argue that the program's fairness is an actuarial question and not a matter of opinion, because insurance premiums are "derived from the extrapolation of objective data." [19] at 8. This is unpersuasive and does not follow; that insurance companies use models based on objective data to determine rates does not mean that those models somehow provide a precise means to measure a vague concept like fairness.[3] Calling an offer "fair" is not a representation of material fact.

American Family's representation that policyholders could trust it to support them during the coronavirus is likewise not a statement of material fact. Ridings argues that this representation implied that the relief program "was free of unfairness and the taint of deception." [19] at 6. But like "fairness," pledges of "trust" and "support" cannot serve as the basis of a consumer-fraud claim because such representations are "not capable of precise measuring" and stack "vague suggestion upon vague suggestion." *Barbara's Sales*, 227 Ill.2d at 75. Indeed, telling Ridings that she could trust American Family to support her during the coronavirus could reasonably mean any number of things. It could mean that American Family would

---

[3] Ridings does not plead how much premium relief is required by her actuarial calculations and does not cite any data that draws a clear line from fewer cars on the road to windfall profits in the insurance company's pocket. It's not obvious that she could. According to the National Highway Traffic Safety Administration, drivers who remained on the roads during the second quarter of 2020 engaged in riskier behavior. "There is evidence … that seat belt use as a fraction of overall drivers declined, and that speeding and impaired driving increased proportional to total driving from the beginning of stay-at-home orders in March 2020 in comparison to previous years. Thus, drivers with greater risk tolerance may have contributed to the worse safety outcomes on a per-[vehicle miles traveled] basis." Essie Wagner et al., National Highway Traffic Safety Administration, Report No. DOT HS 813 011, *Examination of the traffic safety environment during the second quarter of 2020: Special report* 9 (2020).

9

continue to pay her claims despite uncertain times; or consider modifying the terms of her contract; or voluntarily provide her some form of relief even if not required under her policy; or something else entirely. The point is that no reasonable consumer would read American Family's platitudes of "trust" and "support" as representations of material fact.

American Family also didn't conceal or omit material facts. Under the Consumer Fraud Act, omitted or concealed facts are material if they would have led a reasonable consumer to act differently if known, or if they concern the type of information upon which a consumer would be expected to rely in deciding whether to purchase. *Connick*, 174 Ill.2d at 504–05. "In other words, the fact 'must be essential to the transaction between the parties.'" *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (quoting *L.R.J. Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir.1995)). American Family concealed or omitted material facts, Ridings says, by failing to tell policyholders that its relief program was unfair inadequate, and compared unfavorably to its competitors' relief programs. It also concealed "that the relief it characterized as 'trusted support' ... was in fact a windfall for the company." [19] at 7.

None of these constitute omitted or concealed material facts. American Family disclosed its premium relief program and what it entailed. It was not required to express its opinions on the fairness or adequacy of the offer. Ridings's description of the relief program as a windfall does not suggest concealment. Ridings does not argue that the pandemic somehow nullified her insurance contract, and under its terms,

10

American Family was not required to provide premium relief in the event that it received fewer claims than expected. American Family could have done nothing. Nor did American Family conceal how its premium relief compared to other auto insurers; information about other relief programs was publicly available in early April 2020. *See* [20] at 7 n.2 (compiling announcements on Progressive, State Farm, and GEICO's websites detailing their respective premium-relief programs). American Family could not have concealed facts that were publicly available and accessible to Ridings.

Illinois law, moreover, does not require a company to affirmatively share how an offered program or product will affect its own profits. A reasonable consumer has no expectation that an insurance company will disclose such information. Profit-margin information was not essential to whether Ridings would continue paying premiums under her contract—which made no mention of American Family's profits. And the complaint contains no allegation that such information would have led her to cancel the policy or act differently. *See Toulon v. Continental Casualty Co.*, 877 F.3d 725, 740 (7th Cir. 2017) (failure to include an affirmative statement that, had omitted fact been known, plaintiff would not have bought insurance policy provided "an additional reason why [plaintiff] has failed to state a claim that [defendant] made a 'material' omission").

Finally, Ridings has failed to allege actual damages. Ridings says that American Family exploited COVID-19 and misled policyholders to secure an unjust windfall, which "cost policyholders money." [19] at 9. But Ridings does not allege that it cost her any money, and if so, how. The complaint does not allege, for example, that

11

Ridings would have cancelled her policy, even though she had that right. *See* [17-1] at 47–48.[4] Ridings does not allege that American Family's representations or omissions stopped her from accessing public information about other auto-insurance relief programs, cancelling her policy, or signing up with another insurer. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (examining statements at issue together with other information available consumer may eliminate possibility of deception). All that's alleged is that Ridings continued to pay the premiums she owed under her insurance contract. And because of the relief program, Ridings actually paid less than that. She got a pecuniary benefit, and accordingly, she "fail[s] to establish the actual damages element." *See Kim*, 598 F.3d at 366.

   2. *Unfairness*

That leaves unfairness. A practice may be unfair even if not deceptive. Conduct may be unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers. *Horist v. Sudler & Co.*, 941 F.3d 274, 280 (7th Cir. 2019) (quoting *Vanzant*, 934 F.3d at 739). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418 (citation omitted). Ridings argues that the premium relief was an unfair practice because it was designed to

---

[4] American Family attached Ridings's insurance contract to the motion to dismiss. [17-1] at 27–59. Because Ridings's status as an American Family policyholder is referred to in her complaint and central to her claim, the policy is considered part of the pleadings. *See Mueller*, 880 F.3d at 895.

secure an unearned windfall and because American Family "concealed ... the 'inadequacy and unfairness' of the program." [19] at 6.

The complaint satisfies none of the criteria for unfair conduct. American Family's premium relief program did not violate public policy. Under Illinois law, American Family was free to set and adjust premiums in accordance with its contracts. *Corbin v. Allstate Corp.*, 2019 IL App (5th) 170296, ¶ 12 ("[T]he Illinois legislature has determined that open competition in auto insurance rates is workable and beneficial ... [and] insurers ... are free to establish rates in response to their independent assessments of economic and market conditions."); [17-1] at 42 (providing that American Family may adjust premiums). The point of this is not, as Ridings argues, that the issues here are purely regulatory. In fact, it's the opposite. Illinois has adopted an open-market approach for auto-insurance premium rates; this policy—coupled with the lack of any support for Ridings's claims under her contract or Illinois law—shows that American Family's premium relief program did not violate public policy. Illinois's regulatory scheme does not determine what rates are fair. Ridings's insurance policy allowed American Family to adjust rates within the policy period, but it did not require any adjustment. And although Ridings asserts that Illinois law required premium relief because conditions of the pandemic presented the company with the prospect of a massive windfall, there's no Illinois statute, regulation, or case to support this proposition.

American Family's provision of premium relief was not immoral, unethical, oppressive, or unscrupulous. A plaintiff must show that a practice is "so oppressive

13

as to leave the consumer with little alternative except to submit to it." *Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) (quoting *Robinson*, 201 Ill.2d at 421). Here, Ridings had readily available alternatives; as noted, Ridings was free to cancel her policy at any time. *See* [17-1] at 47–48. She wasn't coerced or forced to keep paying her discounted premiums.

Lastly, and for similar reasons, the complaint has not alleged substantial injury. Ridings argues that her premiums were grossly excessive in light of the pandemic. But under Illinois law, even "charging an unconscionably high price generally is insufficient to establish a claim for unfairness." *Toulon*, 877 F.3d at 741 (quoting *Robinson*, 201 Ill.2d at 418). Ridings must "show that [s]he suffered substantial injury, and that [s]he could not avoid this injury." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). She has shown neither. For reasons already discussed, Ridings has not pleaded how the premium relief she received caused her any pecuniary harm, and even if she had, it could have been avoided through cancellation of her policy.

In sum, the complaint fails to allege deceptive or unfair conduct that caused any pecuniary damage. Count II is dismissed.

### B. Common Law Fraud

A plaintiff alleging common-law fraud must allege: (1) a false statement of material fact; (2) that is known or believed to be false by the person making it; (3) with intent to induce the plaintiff to act; (4) plaintiff's justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance.

14

*See Newman v. Metropolitan Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (quoting *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008)). Ridings emphasizes that the same American Family representations and omissions discussed above are material facts "on which policyholders would rely in deciding whether to accept or challenge the program's size." [19] at 10. Ridings's common-law fraud claim fails for largely the same reasons as her consumer-fraud claim based on deception: she identifies no false statement of material fact and no damage.

Common-law fraud also raises additional barriers to recovery for Ridings. For one thing, fraudulent concealment requires a plaintiff to "allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 174 Ill.2d at 500. Neither Ridings's policy nor Illinois law saddled American Family with a duty to disclose how its premium relief compared to competitors, its opinion about the fairness or adequacy of its relief offer, or whether it was positioned for a windfall. *See Toulon*, 877 F.3d at 737 (noting that no fiduciary relationship exists between an insurer and an insured under Illinois law).

And unlike statutory consumer fraud, to state a common-law fraud claim, Ridings must plausibly allege that she justifiably relied on American Family's misrepresentations or omissions. *See Dilling*, 228 Ill.2d at 351 (justifiable reliance on the truth of an alleged fraudulent misrepresentation is a "critical element that must be established" by plaintiff). "Without reliance, a plaintiff cannot have been hurt by the fraud." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 591 (7th Cir. 2017) (internal quotation marks and citation omitted). Reliance is not justifiable if a

15

plaintiff "has reason and opportunity to question the truth of the alleged misrepresentation." *Newman*, 885 F.3d at 1003. The complaint asserts that Ridings "justifiably relied on the express and/or implied representations subsumed within the company's offer of premium relief." [7] ¶ 53. She argues that American Family's "characterization of the relief—casting it as much-needed 'support' in a time of crisis—was intended to induce policyholders to accept (and not challenge) the size and terms of the relief." [19] at 8. But these allegations don't cross the plausibility threshold. Ridings had an opportunity to compare the program to others and, if she determined that they were unfair or unsupportive, she could have cancelled her policy.

Count III is dismissed.

### C. Bad-Faith Breach of Contract

Ridings next argues that American Family breached the duty of good faith and fair dealing. This duty is implied in every contract; it "is an implied promise between the parties that they will not do anything to injure the other party's right to enjoy the benefits of the contract." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 919 (7th Cir. 1997) (applying Illinois law). For example, when "a party's obligation is subject to a condition precedent, a duty of good faith and fair dealing is imposed upon that party to cooperate and to not hinder the occurrence of the condition." *Unit Trainship, Inc. v. Soo Line R. Co.*, 905 F.2d 160, 163 (7th Cir. 1990). This implied covenant is "used as an aid in construing a contract under Illinois law, but it does not create an independent cause of action ... [or] permit a party to enforce an obligation not present

16

in the contract." *McArdle v. Peoria School District No. 150*, 705 F.3d 751, 755 (7th Cir. 2013).

Ridings does not allege that American Family breached her insurance contract or did anything to hinder access to her benefits under it. She doesn't say, for example, that American Family exercised discretion under any provision of the contract in bad faith. She instead argues that because there was less driving and fewer claims as a result of COVID-19, "Illinois law affirmatively required at least some premium relief ... because the duty of good faith and fair dealing is implied in every contract, including auto insurance contracts." [19] at 7. But the duty of good faith and fair dealing doesn't permit a party to add substantive provisions to a contract when circumstances change. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395–96 (7th Cir. 2003) ("Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract."). Accordingly, Ridings can't use the covenant of good faith and fair dealing to rewrite her contract to add a premium relief requirement.

Count IV is dismissed.

**D.   Unjust Enrichment**

Ridings's failure to allege fraud or a breach of her insurance contract is also fatal to her unjust enrichment claim. "Unjust enrichment does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue

17

influence, or, alternatively, it may be based on contracts which are implied in law." *Toulon*, 877 F.3d at 741 (citation omitted). The complaint claims that American Family's premium relief program secured an unjust windfall to the detriment of policyholders, which "violates fundamental principles of justice, equity, and good conscience." [7] ¶ 60.

Ridings fails to plead unjust enrichment for two independent reasons. First, for reasons already discussed, she has not alleged fraud. *See Toulon*, 877 F.3d at 742. Second, "[a] claim for unjust enrichment is based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application." *Id.* (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014)) (internal quotation marks omitted). Ridings argues that it's contradictory to say that the dispute is governed by the policy on the one hand, while also saying she has no remedy under the policy on the other. [19] at 12. Those two things are not mutually exclusive, however. Ridings's relationship for insurance is governed by an actual contract with American Family, and that contract does not contain a provision that gives her a remedy in this case. Unjust enrichment cannot supply an implied one.

Count V is dismissed.

### E. Declaratory Relief

With the substantive claims resolved, there's no basis for declaratory relief. Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party" in a case or controversy within its jurisdiction. 28

U.S.C. § 2201(a). The Act's text and history confer federal courts with significant discretion in deciding whether to declare the rights of parties. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). Courts "often decline to exercise this discretion when the declaratory judgment claim substantially overlaps with the plaintiff's substantive claims." *North American Elite Insurance Co. v. Menard Inc.*, No. 19 C 6528, 2020 WL 5810411, at *7 (N.D. Ill. Sept. 30, 2020); *Cohn v. Guaranteed Rate Inc.*, 130 F.Supp.3d 1198, 1206 (N.D. Ill. 2015) (collecting cases).

I decline to do so for the same reason. Ridings concedes that "to the extent the claim for declaratory relief is substantively duplicative of other claims pled in the complaint, it must be dismissed." [19] at 12. Duplicative they are—there's no daylight between Ridings's substantive claims and her request for declaratory relief. And the complaint even notes that "declaratory relief by this Court will terminate some or all of the existing controversy between the parties." [7] ¶ 36.

Count I is dismissed.

### F. Leave to Amend

Plaintiff has not requested leave to amend or explained how she could cure the defects identified by American Family in its motion to dismiss. But under Federal Rule of Civil Procedure 15(a)(2), courts should freely give leave to amend when justice requires. Generally, an initial dismissal for failure to state a claim should be without prejudice, unless it is certain from the face of the complaint that any amendment

would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Ridings's claims depend entirely on the faulty premise that American Family was required to give her premium relief, and that by not giving her enough of it, it somehow secured an unlawful windfall. American Family's decision to give Ridings a benefit to which she was not entitled under her policy was not fraudulent or unfair, it caused her no damage, and it was not contrary to law. Amendment would be futile. Ridings's complaint is dismissed with prejudice.

## IV. Conclusion

Defendant's motion to dismiss, [16], is granted. The complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

                                                  Manish S. Shah
                                                  United States District Judge

Date: February 24, 2021